IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| BRIAN BOWMAN, : | |
| : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civ. No. 19-830-LPS |
| : | |
| BARCLAYS BANK OF DELAWARE, : | |
| : | |
| : | |
| Defendant. : | |
| : | |

Raeann Warner, JACOBS & CRUMPLAR, P.A., Wilmington, DE

James A. Lewis and Jessica Ellis, PENNINGTON LAW GROUP, South Orange, NJ

    Attorneys for Plaintiff Brian Bowman

Adam V. Orlacchio, BLANK ROME LLP, Wilmington, DE

Mark Blondman and Asima J. Ahmad, BLANK ROME LLP, Philadelphia, PA

    Attorneys for Defendant Barclays Bank of Delaware

**MEMORANDUM OPINION**

May 26, 2020
Wilmington, Delaware



**STARK, U.S. District Judge:**

Pending before the Court is Defendant Barclays Bank of Delaware's ("Barclays") motion to dismiss (D.I. 12) Plaintiff Brian Bowman's ("Bowman" or "Plaintiff") First Amended Complaint (D.I. 11). For the following reasons, Barclays' motion will be denied.

## BACKGROUND

Barclays is a Delaware corporation. (D.I. 11 at ¶ 10) Bowman is an African-American software engineer. (D.I. 11 at ¶ 1) In September 2016, AETEA Information Technology, Inc. ("AETEA") hired Bowman to provide software engineering services to Barclays, an AETEA client.[1] (D.I. 13 Ex. A at 1, 6) Nearly two years later, an AETEA executive informed Bowman that Barclays had "terminated his employment." (D.I. 11 at ¶ 65) Bowman then filed suit against Barclays, alleging that Barclays "treat[ed] him less favorably than his non-American coworkers" and terminated his employment on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"); and the Delaware Discrimination in Employment Act, 19 Del. C. 1953 § 711 ("DDEA"). (D.I. 11 at ¶ 2) Barclays moved to dismiss Bowman's Title VII and DDEA claims on the grounds that Barclays was not Bowman's employer. (D.I. 13 at 3)

---

[1] The Court finds it appropriate to consider Bowman's agreements with AETEA, which Barclays attached to its motion to dismiss, without converting Barclays' motion to a motion for summary judgment. (*See* D.I. 13 Ex. A) Although courts evaluating motions to dismiss generally consider only the complaint, exhibits, and matters of public record, courts may also consider undisputedly authentic documents attached to the motion which form the basis of a plaintiff's claim. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). A document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426. Here, Bowman's employment agreements with AETEA are integral to his complaint. (*See, e.g.*, D.I. 11 at ¶ 1)

1

## LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that

discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## DISCUSSION

Title VII prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S 228, 342 (2013). The DDEA similarly applies to employers. *See* 19 Del. Code Ann. § 711 ("It shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race . . . or national origin.").[2]

Bowman alleges that Barclays was his employer and discriminated against him due to his race and national origin. (D.I. 11 at ¶ 72) To survive the pending motion to dismiss, Bowman must plausibly allege (taking all well-pleaded factual allegations as true) that Barclays was Bowman's employer. Bowman has met this standard.

---

[2] Because the DDEA is modeled on Title VII and contains virtually identical language, Delaware courts take "interpretive lead from federal decisions construing and applying Title VII." *Riner v. Nat'l Cash Register*, 434 A.2d 375, 376 (Del. 1981); *see also Miller v. State*, 2011 WL 1312286, at *7 (Del. Super. Ct. Apr. 6, 2011). Thus, the Court will consider the federal and state law claims together. *See Burgess v. Dollar Tree Stores, Inc.*, 642 Fed. App'x 152, 154 n.7 (3d Cir. 2016).

"[T]he question of whether an individual is an employee turns on the hiring party's right to control the manner and means by which the product is accomplished." *Brown v. J. Kaz, Inc.*. 581 F.3d 175, 180 (3d Cir. 2009). To answer this question in Title VII cases, courts examine factors identified by the Supreme Court in *Nationwide Mutual Insurance Company v. Darden*:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

503 U.S. 318, 323 (1992); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015). The Third Circuit "generally focus[es] on which entity paid [the individuals'] salaries, hired and fired them, and had control over their daily employment activities." *Faush*, 808 F.3d at 214 (internal quotation marks omitted).

The Third Circuit's decision in *Faush* is instructive. There, a staffing firm assigned plaintiff Matthew Faush to work temporarily for defendant Tuesday Morning, a home goods store. *See id*. at 210. After Faush alleged that Tuesday Morning terminated his employment in violation of Title VII and Pennsylvania state law, Tuesday Morning sought summary judgment on the grounds that Faush was not Tuesday Morning's employee. Applying the three *Darden* factors, the Third Circuit denied the motion. *See id*. at 215. It held that a reasonable jury could find that Tuesday Morning paid Faush's salary – even though it made direct payments to the staffing firm, not Faush – because, among other reasons, Tuesday Morning paid the firm for each hour Faush worked and was required to pay Faush's overtime, making Tuesday Morning's payments "functionally indistinguishable from direct employee compensation." *Id*. at 215-16.

4

Further, a reasonable jury could find that Tuesday Morning was the entity that "hired and fired" Faush because it "ha[d] ultimate control over whether Faush was permitted to work at its store" and "had the power to demand a replacement from [the staffing firm] and to prevent the ejected employee from returning to the store." *Id*. at 216.  Finally, a reasonable jury could find that Tuesday Morning had control over Faush's daily employment activities because Tuesday Morning "gave Faush assignments, directly supervised him, provided site-specific training, furnished any equipment and materials necessary, and verified the number of hours he worked on a daily basis." *Id*. at 216.

Applying these same *Darden* factors here, a reasonable jury could likewise find that Barclays was Bowman's employer.

Under Bowman's employment contract with AETEA, Bowman was obligated to submit to AETEA a "[Barclays]-approved time record" marking his hours.  (*See* D.I. 13 Ex. A at 1-2) Barclays was obligated to authorize and pay for Bowman's overtime.  (*See* D.I. 13 Ex. A at 6) These facts could support a finding that Barclays paid Bowman's salary.  *See Faush*, 808 F.3d at 215-16.

Bowman alleges that his Barclays supervisor told him that he had the power to terminate him.  (D.I. 11 at ¶ 45)  He further alleges that an AETEA executive informed him that "Barclays had terminated his employment."  (D.I. 11 at ¶ 65)  These facts could support a finding that Barclays had the power to terminate Bowman and demand his replacement from AETEA – and, thus, that Barclays hired and fired Bowman.  *See Faush*, 808 F.3d at 216.

Finally, Bowman alleges that his Barclays supervisor, Farad Rajack, directed the pace of Bowman's work and evaluated his work product.  (D.I. 11 at ¶¶ 16-17, 21-22, 36)  Barclays also verified the number of hours that Bowman worked.  (D.I. 13 Ex. A at 1)  These facts could

5

support a finding that Barclays controlled Bowman's daily work schedule.  *See Faush*, 808 F.3d at 216.

Barclays did not address the *Darden* factors in its opening brief. (*See generally* D.I. 13) Nor did it file a reply brief.  Rather, Barclays predicates its motion entirely on a single provision in Bowman's agreement with AETEA, which states: "EMPLOYEE AGREES THAT HE/SHE IS NOT AN EMPLOYEE OF [BARCLAYS] AND IS NOT ENTITLED TO ANY BENEFITS OF ANY TYPE THAT [BARCLAYS] PROVIDESTO ITS OWN EMPLOYEES." (D.I. 13 at 2-3; *see also* D.I. 13 Ex. 1 at 6)

While a contractual provision that a plaintiff is not a firm's employee is "strong evidence" that the plaintiff is not in fact the firm's employee, it is "not dispositive of the plaintiff's employment status."  *Brown*, 581 F.3d at 181.  Even when such an agreement exists, courts primarily consider whether the "*Darden* factors in their totality" show that the individual was an employee.[3]  *Id.* (concluding that plaintiff was not defendant's employee under *Darden*, which was "reinforced" by agreement providing that plaintiff was not defendant's employee). Here, Bowman's allegations and the agreements attached to Barclays' motion together plausibly suggest that Barclays may reasonably be found to have been Bowman's employer under the relevant *Darden* factors.  Therefore, the Court will deny Barclays' motion.

## CONCLUSION

An appropriate order follows.

---

[3] Barclays' previous argument (directed to the original complaint) that the agreement renders the *Darden* test irrelevant (*see* D.I. 9 at 1-3) is incorrect.  *See, e.g.*, *Brown*, 581 F.3d at 181; *Singh v. Pocono Med. Ctr.*, 2011 WL 13346522 at *9-10 (M.D. Pa. Mar. 4, 2011) (applying *Darden* test despite contract stating that plaintiff "will be considered an independent contractor, and not an employee" because whether plaintiff was employee "also turns on" *Darden* factors).